UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL F. ADAMS, individually and in his
capacity as President of the Sheriff Officers
Association, Inc. and "JOHN DOE" and "JANE
DOE" being persons in the Bargaining Unit
represented by the Sheriff Officers Association, Inc.
and whose names are too numerous to mention,

                          Plaintiffs,

           -against-

THOMAS SUOZZI, in his capacity as County
Executive of the County of Nassau, HOWARD
WEITZMAN, in his capacity as Comptroller of the
County of Nassau and THE COUNTY OF
NASSAU,

                         Defendants.
------------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
03 CV 4363 (ADS) (ARL)

**APPEARANCES:**

**KOEHLER & ISAACS, LLP**
Co-counsel for the plaintiffs
61 Broadway
25th Floor
New York, NY 10006
    By:   Malcolm A. Goldstein, Esq., of Counsel

**CERTILMAN BALIN ADLER & HYMAN, LLP**
Co-counsel for the plaintiffs
90 Merrick Avenue
East Meadow, NY 11554
    By:   Wayne J. Schaefer, Esq.
               Sebastian Alia, Esq., of Counsel

**PROSKAUER ROSE, LLP**
Attorneys for the defendants
1585 Broadway
New York, NY 10036
    By:    Edward A. Brill, Esq., of Counsel

**SPATT, District Judge.**

This case involves a dispute over a decision by Nassau County to unilaterally impose a pay lag on the correction officers employed by the County. The plaintiff Michael F. Adams, individually and in his capacity as President of the Sheriff Officers Association ("ShOA"), claims that the implementation of the lag payroll by the defendants County Executive Thomas Suozzi, Comptroller Howard Weitzman, and the County of Nassau (collectively, the "County"), violates the Constitution of the United States, the Constitution of the State of New York, the New York State Civil Service Law, and the collective bargaining agreement entered into between the County and ShOA.

The ShOA seeks a declaration that the imposition of the lag payroll is unlawful and an order directing the County to repay the monies withheld pursuant to the lag payroll arrangement. Currently before the Court are motions by the County and the ShOA for summary judgment. For the reasons set forth below, the Court finds that the unilateral imposition of a pay lag by the County deprived the correction officers of their property in violation of the Due Process Clause of the Fourteenth Amendment.

## I.  BACKGROUND

The following facts are largely undisputed, and are taken from the parties Rule 56.1 statements, which both parties rely solely on to factually support their motions for summary judgment, rather than submitting affidavits or other evidence.  Prior to 1999, correction officers employed by the County were represented collectively with other County employees by the Civil Service Employees Association Local 100 ("CSEA").  In 1999, the correction officers fragmented from the CSEA, and the ShOA was certified as the representative of a bargaining unit consisting solely of correction officers employed by the County.  The County and ShOA agreed that they would continue to honor the terms of the prior collective bargaining agreement that had been agreed to by the CSEA, until such time as an initial ShOA collective bargaining agreement could be negotiated.

In December 1999, the County met with five law enforcement employee organizations, including ShOA (collectively, the "unions"), and advised the unions that fiscal concerns would require that employees be laid off, unless they could agree upon certain cost-saving measures. On December 22, 1999, the County entered into memorandum of agreement ("Lag Payroll Agreement") with the five unions that detailed the ability of the County to institute a "lag payroll" during calendar year 2000.  A "lag payroll," if implemented, would allow the County to defer ten days of pay of each union member over the course of ten bi-weekly pay periods.  The deferred

pay would not be returned until the union member separated from service with the County, at the union member's then-current rate of pay. On December 29, 1999, the County enacted Resolution 574-1999 ratifying the Lag Payroll Agreement.

However, the Lag Payroll Agreement specifically stated that it would be inoperative as to ShOA unless certain conditions were satisfied. First, it was subject to ratification by ShOA members, within 45 days, according to SHOA's internal procedures. Second, it was subject to the execution of a further memorandum of agreement setting forth the terms and conditions of an initial collective bargaining agreement between SHOA and Nassau County.

Both of these conditions failed to materialize. First, the Lag Payroll Agreement was never submitted to the members of SHOA for ratification. Second, the memorandum of agreement regarding a collective bargaining agreement between the County and ShOA was not completed until July 27, 2001, more than a year and a half after the Lag Payroll Agreement was negotiated. The collective bargaining agreement that was eventually executed between the parties never mentions "lag payroll," deferral of pay, or the Lag Payroll Agreement.

Two years later, on August 27, 2003, the County Executive, through his Director of Labor Relations, sent a letter notifying ShOA that it intended to defer the pay of its members beginning with the September 5, 2003, payroll period, pursuant to the Lag Payroll Agreement that was negotiated more than three years before on

December 22, 1999. On September 4, 2003, the ShOA filed an order to show cause in New York Supreme Court, Nassau County, seeking to enjoin the County from implementing the lag payroll. The complaint asserts that the lag payroll violates the Contracts Clause and the Due Process Clause of the Constitution of the United States; the Constitution of the State of New York; the New York State Civil Service Law; and the collective bargaining agreement entered into between the County and ShOA. On September 5, 2003, the County removed the action to federal court based on federal question jurisdiction.

On September 9, 2003 a hearing was held before United States District Judge Denis Hurley on the request for a temporary restraining order. Judge Hurley denied the application and set the matter down for a hearing on the preliminary injunction. On September 18, 2003, the case was reassigned to this Court and ShOA withdrew its request for a preliminary injunction in favor of proceeding to an adjudication on the merits. The County proceeded to lag the pay of the members of the ShOA.

The County then moved to stay the case and compel arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, on the ground that the Lag Payroll Agreement required arbitration of the dispute. On October 8, 2004, the Court denied the County's request. The Court found that the ShOA never entered into the Lag Payroll Agreement, and thus could not have agreed to submit to the arbitration provisions contained in the agreement. See Adams v. Suozzi, 340 F. Supp. 2d 279,

284 (E.D.N.Y. 2004). On appeal, the Second Circuit affirmed the decision, noting that the County had waived the argument, raised for the first time on appeal, that the collective bargaining agreement concluded between the parties in 2001 gave rise to an independent obligation to arbitrate. Adams v. Suozzi, 433 F.3d 220, 222 n.1 (2d Cir. 2005). The Second Circuit also stated that the County had conceded that the only authority it was relying on to implement the pay lag upon ShOA was the Lag Payroll Agreement. Id. at 224.

On January 26, 2006, both parties filed the instant motions for summary judgment. The County only addresses the federal constitutional claims. It argues that the claim under the Due Process Clause should be dismissed because there are adequate post-deprivation procedures under New York law and the arbitration grievance procedures of the collective bargaining agreement. In addition, the County contends that the actions of the County Executive did not violate the Contracts Clause of the United States Constitution because the decision to implement the pay lag was not an act of the legislature. On the other hand, ShOA seeks summary judgment and an order directing the County to repay the wages on the ground that the County admitted it had no legal basis for applying the lag payroll.

## II. DISCUSSION

### A. The Summary Judgment Standard

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Jeffreys v. City of New York, 426 F.3d 549, 553–54 (2d Cir. 2005); Wilkinson v. Russell, 182 F.3d 89, 96–97 (2d Cir. 1999); In Re: Blackwood Associates, L.P., 153 F.3d 61, 67 (2d Cir. 1998) (citing Fed. R. Civ. P. 56(c)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Even though both parties move for summary judgment and assert the absence of any genuine issues of material fact, the court need not enter judgment for either party. Morales v. Quintel Entertainment, Inc., 249 F.3d 115, 121 (2d Cir. 2001); Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). Instead, each motion must be examined on its own merits, and all reasonable inferences must be drawn against the party making the motion. Morales, 249 F.3d at 115; Amato v. City of Saratoga Springs, 170 F.3d 311, 322 (2d Cir. 1999) (citing Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir.1997)); Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981).

### B. Procedural Due Process Claim

In determining whether the imposition of a pay lag violates the Fourteenth Amendment right to procedural due process, the Court applies a familiar two-step inquiry: (1) whether there was a constitutional liberty or property interest that is the subject of a deprivation; and, if so, (2) what process was due before the state could deprive one of that interest. Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002).

The first step requires a determination of whether there is an interest involved in this case encompassed by the Fourteenth Amendment's protection of liberty and property. Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed.2d 548 (1972). Property interests do not arise from the Constitution, but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Velez v. Levy, 401 F.3d 75, 85 (2d Cir. 2005); see also Perry v. Sindermann, 408 U.S. 593, 601, 92 S. Ct. 2694, 33 L. Ed.2d 570 (1972). Where the property interest is related to employment, the courts look to the relevant law, contract, or regulation governing the employment to determine whether a property interest is protected by the Fourteenth Amendment. Ciambriello, 292 F.3d at 314; S & D Maintenance Co. v. Goldin, 844 F.2d 962, 966 (2d Cir. 1988); see also Perry, 408 U.S. at 601–02, 92 S. Ct. 2694, 33 L. Ed.2d 570. "[N]ot every contractual benefit rises to the level of a constitutionally protected

8

property interest." Ezekwo v. N.Y. City Health & Hosps. Corp., 940 F.2d 775, 782 (2d Cir. 1991). There must be true and legitimate claim of entitlement to the property. Roth, 408 U.S. at 577, 92 S. Ct. 2701, 33 L. Ed.2d 548; Local 342, Long Island Public Service Employees v. Town Bd. of Town of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994).

In this case, ShOA claims that the salary of its members that they have earned by performance of services is property that is protected by the Due Process Clause. The Court agrees. One state court in New York has explicitly recognized that an employee of the state has the right to regular paychecks. Cappelli v. Sweeney, 167 Misc.2d 220, 237, 634 N.Y.S.2d 619, 630 (N.Y. Sup. Ct. Kings County 1995). Other courts have also found, "There can be no doubt that the plaintiff's interest in his salary . . . is a property interest protected by the Constitution." Eguia v. Tompkins 756 F.2d 1130, 1138 (5th Cir. 1985) (citing Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969)); Orloff v. Cleland, 708 F.2d 372, 378 (9th Cir.1983).

Moreover, many courts in the Second Circuit have determined that individuals have a constitutionally protected property interests in similar types of payments from the state. Russell v. Dunston, 896 F.2d 664, 669 (2d Cir. 1990) (holding that state disability retirement benefits are a constitutionally protected property interest); Winston v. City of New York, 759 F.2d 242, 247-49 (2d Cir. 1985) (holding that

9

municipal employee retirement benefits are protected); Basciano v. Herkimer, 605 F.2d 605, 609 (2d Cir. 1978) (holding that employee's interest in accident disability retirement benefits are a constitutionally protected property interest); Ortiz v. Regan, 749 F. Supp. 1254, 1258–59 (S.D.N.Y. 1990) (same, as to monthly advance retirement benefits); Weaver v. New York City Employees' Retirement Sys., 717 F. Supp. 1039, 1043 (S.D.N.Y. 1989) (same, as to municipal employee retirement benefits). Accordingly, the Court finds that the plaintiffs have a protectable property interest in the salary that they have earned from the County under their employment contract.

Having found a property interest, the Court proceeds to the second inquiry, that is, what process are the members of ShOA entitled to under the Constitution before the County can deprive them of their pay. The long-accepted premise is that due process ordinarily requires that persons receive "some kind of hearing" prior to the deprivation of a property interest. See Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 299, 101 S. Ct. 2352, 69 L. Ed.2d 1 (1981); Velez, 401 F.3d at 91–92; DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003); Dwyer v. Regan, 777 F.2d 825, 832 (2d Cir. 1985); Burtnieks v. City of New York, 716 F.2d 982, 988 (2d Cir. 1983). However, where the state is effectively "unable to anticipate and prevent a random deprivation of a liberty interest, post deprivation remedies might satisfy due process." Zinermon v. Burch, 494 U.S. 113, 132, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). Thus, the type of process required under the Constitution rests on

whether the deprivation occurs as the result of a "random unauthorized act" by a state employee, or an "established state procedure."  Beechwood Restorative Care Ctr. v. Leeds, 436 F.3d 147, 156–57 (2d Cir. 2006).

If the deprivation occurs at the hands of a government actor by way of a "random and unauthorized act," the constitutional protection of due process does not require a pre-deprivation hearing, so long as there is an adequate post-deprivation procedure available to address the alleged violation.  Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880–82 (2d Cir. 1996).  This is so because it would be impossible for the state to provide a pre-deprivation hearing where the taking involves the unforseen act of "lower-echelon state employees." Dwyer, 777 F.2d at 832; see DiBlasio, 344 F.3d at 302; see also Parratt v. Taylor, 451 U.S. 527, 541, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981); Hudson v. Palmer, 468 U.S. 517, 534, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).  This different treatment for "random and unauthorized acts" of low level state actors rests on "pragmatic considerations."  Hellenic Am., 101 F.3d at 880 (citing Hudson, 468 U.S. at 532–33, 104 S. Ct. 3194, 82 L. Ed. 2d 393). When an arbitrary act by a low-level state employee causes a deprivation, "it is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place."  Velez, 401 F.3d at 92 (quotations omitted).

In this light, the Second Circuit has held that an Article 78 proceeding under New York law affords sufficient post-deprivation constitutional process to remedy a random and unauthorized violation of due process by a lower level employee. See Hellenic Am., 101 F.3d at 881–82; see also Gudema v. Nassau County, 163 F.3d 717, 724–25 (2d Cir. 1998). An Article 78 proceeding provides the opportunity to review whether the act was "made in violation of lawful procedure, was affected by an error or law or was arbitrary and capricious or an abuse of discretion," N.Y. C.P.L.R. § 7803, and permits the state court to remedy the violation by ordering a hearing or a return of the unlawfully seized property. Beechwood Restorative Care Ctr., 436 F.3d at 156–57. Accordingly, courts have held that Article 78 provides sufficient post-deprivation due process protection where it is impracticable to provide any meaningful pre-deprivation hearing.

In this case, the County's sole argument in support of summary judgment on the due process claim relies on the "random and unauthorized" exception. The County argues that adequate post-deprivation procedures were available—in the form of an Article 78 proceeding or through the collective bargaining agreement grievance procedures—to remedy any perceived due process violation by the County. The Court is unpersuaded. The high level officials in this case cannot invoke the "random and unauthorized" exception to escape liability for failing to provide pre-deprivation process . Zinermon, 494 U.S. at 138, 110 S. Ct. 975, 108 L. Ed. 2d 100. The Second

Circuit has determined "that the 'random and unauthorized' exception to the requirement of a pre-deprivation hearing does not apply where the government actor in question is a high-ranking official with 'final authority over significant matters.' " DiBlasio, 344 F.3d at 302 (quoting Burtnieks, 716 F.2d at 988); see also Velez, 401 F.3d at 92; Dwyer, 777 F.2d at 832. "Since the 'state acts through its high-level officials,' the decisions of these officials more closely resemble established state procedures than the haphazard acts of individual state actors that the [random and unauthorized] exception was designed to cover." Velez, 401 F.3d at 92.

Here, Suozzi and Weitzman are undoubtedly high ranking officials with final authority over significant matters for the County. Suozzi is the County Executive and the Chief Executive Officer of Nassau County Government. Weitzman is the Comptroller of the County of Nassau. Both are elected officials authorized under state law to act on behalf of the County. They are precisely the type of "high ranking" officials that the "random and unauthorized" exception was not intended to apply. Actions taken by high ranking officials pursuant to their authority cannot be considered random or unauthorized. Indeed as to these high ranking officials, "any abuse of that authority that rose to the level of a due process violation cannot be considered 'random and unauthorized.' " DiBlasio, 344 F.3d at 303.

The actions taken by the County were clearly unauthorized. The collective bargaining agreement that was in place at the time the County implemented the pay

lag is silent as to the term "lag pay," deferral of pay, or the Lag Payroll Agreement. In fact, the County has conceded that the only authority it had to rely on in implementing the pay lag was under the Lag Payroll Agreement. Subsequent to that admission, this Court found, and the Second Circuit affirmed, that the ShOA never entered into the Lag Payroll Agreement, and therefore the County had no authority to lag the pay of the members of ShOA.

In order for the County to have properly implemented the lag pay as a new term or condition of employment, the County had a duty to provide the ShOA pre-deprivation notice, and an opportunity to be heard to. These procedural safeguards are not only mandated by the Constitution, but also required under New York state law, which requires state-employers to bargain in good faith prior to the execution of a new or modified collective bargaining agreement. See N.Y. Civ. Serv. Law §§ 204, 205(5)(d), 209-a(1)(d); Roma v. Ruffo, 92 N.Y.2d 489, 495, 705 N.E.2d 1186, 683 N.Y.S.2d 145 (1998). These procedural safeguards were not followed by the County in this situation. The County acted unilaterally and on its own initiative, without providing the ShOA with an opportunity to be heard. This action was both an impermissible imposition of a new term of employment, and unconstitutionally deprived the members of ShOA of two-weeks of their salary. In addition, by failing to employ any other pre-deprivation procedures, the County violated the employees' right to due process under the Fourteenth Amendment of the Constitution.

Accordingly, the motion for summary judgment on the due process claim by the County is denied, and the motion for summary judgment by the ShOA is granted.

**C.     Substantive Due Process**

The ShOA claims that the action of the County deprived its members of the substantive due process right to organize and bargain collectively. The Court rejects this argument as entirely without merit.

In contrast to property rights protected by the due process clause, "[s]ubstantive due process protects only those interests that are 'implicit in the concept of ordered liberty.'" Local 342, 31 F.3d at 1196 (quoting Palko v. Connecticut, 302 U.S. 319, 325, 58 S. Ct. 149, 151, 82 L. Ed. 288 (1937)); see also DiGiovanni v. City of Rochester, 680 F. Supp. 80, 84 (W.D.N.Y. 1988). Such rights are created, not by statute or state law, but by the Constitution and traditional interests that are deeply rooted in this Nation's history and tradition. Id. Thus, the Second Circuit has stated that "simple, state-law contractual rights, without more, are [not] worthy of substantive due process protection." Id. Rather, substantive due process rights include procreation, marriage, and family life. See Harrah Indep. Sch. Dist. V. Martin, 440 U.S. 194, 198, 99 S. Ct. 1062, 1064, 59 L. Ed. 2d 248 (1978).

Here, the ShOA's right to collectively bargain cannot be found in the Constitution or a traditional interest deeply rooted in history. As such, the motion by

the County for summary judgment dismissing the substantive due process claim is granted.

**D.     The Contracts Clause Claim**

Article I, section 10, cl. 1, of the United States Constitution provides, in relevant part, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." Id. "Although this provision sounds like an absolute prohibition . . . , the Contract[s] Clause is viewed as imposing 'some limits upon the power of a State to abridge existing contractual relationships.' " Sanitation and Recycling Industry, Inc. v. City of New York, 107 F.3d 985, 993 (2d Cir. 1997) (quoting Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 242, 98 S. Ct. 2716, 2721, 57 L. Ed. 2d 727 (1978) (emphasis in original)); see also Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 410, 103 S. Ct. 697, 704, 74 L. Ed.2d 569 (1983).

The Second Circuit has instructed that states, like any other private party, "must be able to breach contracts without 'turn[ing] every breach into a violation of the federal Constitution.' " TM Park Ave. Assocs. v. Pataki, 214 F.3d 344, 349 (2d Cir. 2000) (quoting Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248, 1250 (7th Cir. 1996)); see also St. Paul Gaslight Co. v. City of St. Paul, 181 U.S. 142, 149, 21 S. Ct. 575, 45 L. Ed. 788 (1901). "The distinction between a breach of contract and an impairment of contract depends on the availability of a remedy in damages." TM Park Ave. Assocs., 214 F.3d at 349 (quotations omitted). Thus, if the state

breaches a contract, but the obligation to pay damages for the breach of that contract remains, then there has been no impairment under the Constitution.  Id.

Even if the state has impaired a contract, further inquiry is necessary to determine whether there has been a Contract Clause violation.  In general, the Court asks whether there was a change in state law that has "operated as a substantial impairment of a contractual relationship." Allied Structural Steel, 438 U.S. at 244, 98 S. Ct. at 2722, 57 L. Ed.2d 727; General Motors Corp. v. Romein, 503 U.S. 181, 186, 112 S. Ct. 1105, 1109–10 (1992); Energy Reserves Group, 459 U.S. at 411, 103 S. Ct. at 704, 74 L. Ed. 2d.  "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." Romein, 503 U.S. at 186, 112 S. Ct. 1105, 1109–10.

Here, the ShOA claims that the County's implementation of a lag payroll substantially impairs the County's contractual obligation to its employees under the collective bargaining agreement.  This claim is well-founded, considering that the Second Circuit and the New York Court of Appeals has addressed the issue of lag pay on numerous occasions.  See Condell v. Bress, 983 F.2d 415 (2d Cir.1993); Ass'n of Surrogates & Supreme Court Reporters v. New York, 940 F.2d 766 (2d Cir. 1991) ("Surrogates I"); see also Ass'n of Surrogates & Supreme Court Reporters v. State, 79 N.Y.2d 39, 580 N.Y.S.2d 153, 588 N.E.2d 51 (1992) ("Surrogates II").  In each case,

the courts have found that the state's implementation of pay lag substantially impaired the collective bargaining agreement between the employees and the state. Id.; see also University of Hawai'i Professional Assembly v. Cayetano, 183 F.3d 1096, 1104–05 (9th Cir. 1999); Massachusetts Community College v. Commonwealth, 420 Mass. 126, 649 N.E.2d 708, 711 (1995) (noting that most courts have "agreed that a unilateral reduction in contractually established, future state employee salary obligations constitutes substantial impairment for Contract Clause purposes").

However, the instant matter is distinguishable from the prior constitutional violations in Condell and Surrogates I. In order for there to be a Contract Clause violation, there must be some sort of legislative action. Although the term "Laws" in the Contract Clause is not limited to statutes enacted by a state legislature, and it may be applicable to municipal legislation, nevertheless, there must be some change in a "law" to invoke the federal Constitution. See Romein, 503 U.S. at 186, 112 S. Ct. 1105, 1109–10; Local 342, Long Island Public Service Employees v. Town Bd. of Town of Huntington, No. 93 CV 2869 (TCP), 1993 WL 735042, at *3 (E.D.N.Y. Sept. 15, 1993), aff'd, 31 F.3d 1191 (2d Cir. 1994); see also N. Pac. Ry. Co. v. Minnesota ex rel. City of Duluth, 208 U.S. 583, 590, 28 S. Ct. 341, 52 L. Ed. 630 (1908); Ritzie v. City Univ. of N.Y., 703 F. Supp. 271, 277 (S.D.N.Y. 1989).

In this case the County has neither enacted a "law," nor taken any legislative action within the meaning of the Contract Clause that would impair ShOA's

18

contractual relationship under the collective bargaining agreement.  It is undisputed that the only legislative action taken by the County was the enactment of Resolution 574-1999, which merely ratified the Lag Payroll Agreement entered between the County and the Unions.  However, this legislation did not effect a change in the law, or for that matter, the relationship between the ShOA and the County.  It was not until 2003, more than three years later, that the County Executive, through his Director of Labor Relations, notified ShOA that it intended to defer the pay of its members pursuant to the Lag Payroll Agreement.  This action by the County Executive was not a "law" within the meaning of the Contract Clause.  Accordingly, the motion by the County for summary judgment on the Contract Clause claim is granted.

**E.    The Remaining State Law Claims**

Neither party addressed any of the state law claims in their motions for summary judgment.  Considering that the Court has granted all the relief that the plaintiff has requested, these claims are dismissed as moot.

### III.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the motion by the County for summary judgment dismissing the complaint is DENIED; and it is further

**ORDERED**, that the motion by the ShOA for summary judgment on the Procedural Due Process claim is GRANTED; and it is further

**ORDERED,** that the motion by the County for summary judgment dismissing the Substantive Due Process claim and the Contracts Clause claim is GRANTED; and it is further

**ORDERED**, that the County is directed to repay the monies withheld from the members of ShOA pursuant to the lag payroll policy within 60 days of the date of this order; and it is further

**ORDERED**, that the Clerk of the Court is directed to enter judgment in favor of the plaintiff and close this case.

**SO ORDERED.**
Dated: Central Islip, New York
September 12, 2006

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge